Stewart's argument in Johnson v. I believe it's Ryan Good morning, Your Honor. My name is Brick Stortz. I represent Mr. Johnson. And what I'd like to do this morning for a few moments is just discuss the overall package that we're dealing with in this case. Mr. Johnson has written I don't know how many pages of various pleadings and various stages that have gone through various courts. The part of the problem with the entire package that he's done, much of it is redundant and as such is extremely confusing. And basically, he has to a large degree clouded probably the issue that he may have had that would be creditable as far as his habeas petition is concerned. And more importantly, possibly even had it been raised at some point in time in the state system, may well have gotten him relief. So what I would be doing this morning is submitting it as we have done, except for the issues that were the Certificate of Appealability as to Issues 7 and 8. Item 7 was the ineffective assistance of counsel of sentencing. Item 8 was the ineffective assistance of appellate counsel. Now, the only reason I mention Item 8 is because we in Arizona, when this case was handled, and Judge Browning certainly did not want to do it, but I think it's important to note that he decided it based on the law that was in existence in 1992. Now what would happen on a plea, the issue would go to it's the only appellate procedure you have as pursuant to Rule 32 for post-conviction relief. What that would happen is immediately when he would have alleged ineffective assistance of counsel, he would have gotten a separate lawyer other than from the public defender's office that then would have taken and arguably looked at the transcript and proceeded forward with that type of appeal. That's the type of a pleading. This was the case where he had a different lawyer but within the same public defender's office? He actually, Judge, he had two separate public defenders, and one, a Mr. Hoffman, was the one that actually did the plea and the sentencing, and then the public defender's office also handled his direct appeal, because that's the way it was back in 92. Now you only get a direct appeal from a trial, and I should point out the trial situation is, is that when I'm through trying a case, if my client's found guilty, I appeal it to Division II or the Supreme Court, and then automatically I'm replaced, and a new attorney is assigned to write both the appellate brief and the Rule 32 if it's needed. So there's a different cross-checking than was done at that point in time. But let me say this, though, in all fairness, and I know, you know, Mr. Johnson's real problem when you get right down to it is he got a, in my opinion, a very favorable plea. I think the plea is astronomical. I only wish that somehow Wanda Day was still in the county attorney's office, because how he got a plea to these two charges with an eight-month-old baby or eight-months' pregnancy going on with that 13-year-old is beyond me. But the key to it was what was done after that point in time. Nothing was done as far as the sentencing is concerned. And I take the position that his Issue No. 7 is an issue that should in fact have been dealt with. It should have been dealt with at the very beginning of his entire procedures as far as doing his appellate and Rule 32. Now, I realize the court of appeals argued that, well, yes, he did do something. He did mention the fact that he had a history of alcoholism, a history of mental illness, and a history of abuse and what have you. But I don't know if the Court had the opportunity, but on Item No. 164, page 164 of the pleadings that were filed in the by the appellee, there are excerpts from the record and what have you in Section A, No. 164. Mr. Hoffman, counsel for the defendant, made this statement to Judge Alford. What I'm saying, Your Honor, is that the idea of having sexual relations with a 13-, 14-year-old stepdaughter is not as far outside the norm as we would like to believe. I can't conceive of why an attorney would make that kind of a comment at a sentencing hearing. And previous to that comment, he comments that these are carnival people, and almost the implication that that type of relationship in carnival people is okay. And for that reason, the entire sentencing, when you look at that package of documents, he talks on, I think, for about five pages. Three of them, he talks about the babbling and the incoherent and the fact that Mr. Alford was drunk and stupor when he offered the confession to the police. Well, what he could have done, very simply, he could have backed in and attacked the statement after the plea was done by offering a number of things. He could have offered testimony from the officers. He could have had Judge Alford listen to the actual tape, whereby there could have been a situation that would have become apparent that maybe many of the things that he was saying in that narrative statement that he gave to the police on May the 5th were incorrect, not true, or at least subject to question. That could have at least mitigated down to some degree some of the horrible statements he made in there, which include the alleges of sexual conduct with his wife and the 13-year-old girl and a whole series of very, very damaging statements. The problem we have, though, in assessing the prejudice prong under Strickland is even assuming you meet the first prong on that one, you know, we've got the confession and in which he essentially admits to the conduct, and it's difficult to tell whether even had he brought a motion to suppress, he would have been successful on the merit. Well, no, sir. I don't think you're misinterpreting what I'm saying, Judge Tomlin. I'm not saying a motion to suppress at that stage would come into play, because obviously he's already pled guilty. But what I'm saying is he could have, at sentencing by means of a mitigation hearing, attacked some of the validity of the statement. The other thing that was very troubling to me about the way the sentencing went is the But how would you, practically, how would you do that at sentencing? Ask the sentencing court to conduct a hearing and call in some of the police officers to testify?  Absolutely, sir.  Absolutely. That would be a pretty unusual proceeding. It would be. But in this case, the only thing that he had to work with was the fact that he had gotten in that stacked 15 years, potential 5 to 10 to 15, with lifetime probation. That was the hook that he had. And what he needed to do and didn't do was make something available to the court. Another good example, twofold. Number one, there was no psychosexual evaluation done by anybody, the State or the defendant. I don't understand that. I've never seen that done before. Number two, the probation officer in the pre-sentence report made it abundantly clear what she was going to be talking to Judge Alford about, and that was specifically he should get every day that the judge could give to him. And, you know, when a defense lawyer sees that, you have to say, well, I've got to do something. I've got to put on a real effort here. And you can certainly get a continuance of it at that point in time. So, I mean, those are all things that could have been done, but they weren't. And I think that he does meet the first prong of Strickland. The problem is the Court points out, how do we show what would have happened differently? That's what I can't give you an answer on because another problem here, there's never been a hearing conducted in this case. Now, I have no idea as to why Mr. Johnson never felt necessary to ask for a hearing, but he didn't. So unless the Court has some additional questions, that's pretty much my position. Okay. Thank you very much. Thank you. And I will save five minutes for rebuttal. Got plenty of time for rebuttal. You bet. Thank you. May it please the Court, my name is Carla Hodes-Delore. I'm an Assistant Attorney General representing the Respondent. Council is trying to throw you off. I used to try that, too. It never worked for me, either. It's not working. No. First of all, to address Petitioner's first argument regarding ineffective assistance of In this case, before the rules did change in Arizona, Petitioner did have this attorney from the Public Defendant's Office for his plea agreement and on direct appeal. When Petitioner wanted to raise an ineffective assistance of counsel claim in his post-conviction proceedings, the attorney from the Public Defender's Office noticed that it was going to be a conflict of interest, asked to be removed for that reason, and the Court appointed a private attorney. The private attorney did raise ineffective assistance of counsel claims in the post-conviction proceedings, and the appellate court did consider the claims and did not consider them precluded. So there really was no conflict of interest. It did not affect him in that case. In regards to the second argument regarding ineffective assistance of trial counsel because counsel did not present enough mitigating evidence, the evidence that Petitioner claims should have been presented, namely his abusive childhood, his extensive mental health treatment and suicide attempts, and his drug and alcohol abuse, were all noted and detailed in the pre-sentence report by the pre-sentence report writer. And then at sentencing, counsel did make reference to these mitigating factors and stated that Petitioner's confession to the police happened when he was intoxicated and a large part of it was uncorroborated. So counsel did address the mitigating factors and they were set forth in the pre-sentence report. And Petitioner has not shown what other mitigating factors could have been presented to the court that would have reduced his plea, or I'm sorry, that would have reduced the sentence he received. And he hasn't established that any further mitigating evidence would have resulted in a lesser sentence. Because he has not shown this, he has not met the prejudice prong under Strickland sufficient to overturn the presentation of this issue. And that's basically all that is in a nutshell. And unless the court has any other questions... Well, I thank you very much. Counsel, you're meaning to say, I'm not sure there's much to rebut, but, yeah. Well, we very much appreciate you getting right to the point. You have to appreciate these arguments. We do. Just to the two issues, counsel, this speaks a little bit when she talks about what the Court of Appeals addressed. It is true that he had appointed another attorney for a Rule 32. However, by that time, the defendant, or Mr. Johnson, had been writing all of his own pleadings. And the Rule 32 attorney really offered little to put forth at that point in time. And also, the Court of Appeals had already taken the position that while the issue of ineffective assistance had not been previously raised, they didn't feel that it was an issue. And they went back again to much the same argument the State makes, is that, well, yes, he did mention them at sentencing, and they were in the pre-sentence report. The problem with that, sir, is that the pre-sentence report is prepared by the probation department, and they really, you know, they're horribly overworked. And they are basically going to report the facts as simple a way as they can. And really what they do on this kind of a case, they would simply take the police reports that they would get, and they would put the information from the reports in the probation pre-sentence report. So if you take that as the only basis, it doesn't offer the judge any real opportunities to do anything. And in this case, there is a number of things that I think could have been done, and then the question comes in, would it have made a difference? And that's the tough issue, because we don't know. There was no hearing. And the only real simple way, I suppose, that I can argue that is to say if there was a hearing, then we would be in a position to present that type of testimony. But the problem you run up to now, of course, is that in the absence of any kind of a showing on federal habeas review that there actually was something there, it's wholly speculative as to whether such a hearing might be helpful. Exactly. Judge, I can't argue around that. It's just that simple. I hear what you're saying. I know. Obviously, you and I would have done a much better job. Well, I hope we would have. It's troubling because, you know, what troubled me about it, as I began to put together the argument, is when you go back and read all of the stuff that was there, I just firmly believed that had this thing been properly presented at the outset, and I try cases in front of Judge Alford all the time, and I just got to believe that if the ineffective argument had been focused on sentencing, he would have gotten a hearing. And at that point, there is a series of things that could have been presented and done. The biggest mistake in the whole case, when you get right down to it, notwithstanding the remark that Mr. Johnson made, but forget that, why there was not any kind of a sexual evaluation done. Because one of the things he mentions in his colloquia to the Court is the fact that the rate of reoffense on an inner family situation is much lower than others. That's true. But you could have presented testimony to the judge on those particular facts. And the reason I mention those is because I also try what we call sexually violent person cases, which I'm sure eventually you folks will get up here in the Ninth Circuit. There were several this week. Two yesterday. Yeah. And as a matter of fact, that's true. As I recall correctly, it was In re Leon G, if I remember right. He did come here. That's true. Yeah. But the point was is that there is much that you can present to the Court to show that, yes, a sentence of 20 to 25 years would and could have been adequate with the lifetime probation based on his age at the time of release and the fact that then he had been clearly under supervision. That wasn't done, and that's what he would be requesting, and that's the relief he's asked for. Thank you very much. I thank both counsel for your candor and your judgment, and the Court appreciates saving a little bit of time. Thank you very much. The case just argued is submitted, and we'll next hear argument in Parkinson v.
judges: Hug, Canby, Tallman